IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI



LINDA FAY GARNER,
HARMONY HECKMASTER,
NEVILLE LOU STUBBLEFIELD and
JESSICA GRIGSBY,
individually, and on behalf of a class of others similarly situated,

                      Plaintiffs,

v.

REGIS CORPORATION,
a Minnesota corporation,

Serve: National Registered Agents Inc.
       300 B East High Street
       Jefferson City, MO 65101

                      Defendant.

Case No. _____

## COMPLAINT

Plaintiffs Linda Fay Garner, Harmony Heckmaster, Neville Lou Stubblefield and Jessica Grigsby, individually and on behalf of a class of other similarly situated plaintiffs, by and through their counsel, for their Complaint against Defendant Regis Corporation (hereinafter referred to as "Defendant" or "Regis Corporation") hereby state and allege as follows:

### JURISDICTION AND VENUE

1. The Fair Labor Standards Act of 1938, ("FLSA"), as amended, 29 U.S.C. § 201 *et. seq.*, in relevant part, authorizes court actions by private parties to recover damages for violation of the FLSA's minimum wage and overtime provisions and to enforce the prohibition against retaliation. Jurisdiction over Plaintiffs' FLSA claims is based upon Section 16(b) of the FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331 and 1337.

2. This Court has jurisdiction over Plaintiff Linda Garner's individual conversion and misappropriation of trade secrets claims under 28 U.S.C. § 1367 and 28 U.S.C. § 1332.

3. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c), because this is a district in which Defendant does business and this is a district in which a substantial part of the unlawful conduct giving rise to the claims occurred.

## PARTIES

4. Defendant Regis Corporation is a Minnesota corporation, with its principal place of business in Edina, Minnesota. Regis Corporation does business in the State of Missouri and nationwide.

5. Individually-named plaintiff, Linda Garner ("Garner"), is a resident of Sarcoxie, Missouri and a former employee of Defendant. Garner's consent to become a party plaintiff pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit A.

6. Individually-named plaintiff, Harmony Heckmaster ("Heckmaster"), is a resident of Carthage, Missouri and a former employee of Defendant. Heckmaster's consent to become a party plaintiff pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit B.

7. Individually-named plaintiff, Neville Stubblefield ("Stubblefield"), is a resident of Joplin, Missouri and a former employee of Defendant. Stubblefield's consent to become a party plaintiff pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit C.

8. Individually-named plaintiff, Jessica Grigsby ("Grigsby"), is a resident of Carthage, Missouri and a former employee of Defendant. Grigsby's consent to become a party plaintiff pursuant to 29 U.S.C. § 216(b) is attached hereto as Exhibit D.

9. The minimum wage and overtime claims identified in this Complaint are brought under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), as a nation-wide "opt-in" collective action

consisting of all current and former Regis Corporation, SmartStyle division, stylists and salon managers who have worked for the Defendant at any time during the last three years. Plaintiffs, individually and on behalf of other similarly situated employees in the United States, seek relief on a collective basis challenging, among other FLSA violations, Defendant's practice of failing to pay minimum wage and overtime compensation.

10. The class of employees on behalf of whom Plaintiffs bring this nation-wide "opt-in" collection action are similarly situated because they have been or are employed in the same or similar positions as individually-named plaintiffs, and were subject to the same or similar unlawful practices as the individually-named plaintiffs. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from the records of Defendant and potential class members may easily and quickly be notified of the pendency of this action.

## GENERAL ALLEGATIONS

11. Regis Corporation is the world's largest owner, operator, franchisor and acquirer of hair and retail product salons. In 2002, Regis Corporation had 8,684 salons (4,776 company-owned and 3,908 franchised) which generated $2.3 billion in sales. Headquartered in Edina, Minnesota, Regis Corporation has approximately 43,000 employees worldwide.

12. One of Regis Corporation's six divisions is called SmartStyle Family Hair Salons ("SmartStyle"). SmartStyle salons are located exclusively in Wal-Mart stores, and SmartStyle is one of the fastest growing divisions of Regis Corporation. In 2002, SmartStyle generated $224 million in sales from its 1,071 salons. Regis Corporation claims that SmartStyle salons offer "quick and convenient no-appointment services at affordable prices."

13. As an inducement to become employed by Regis Corporation, prospective SmartStyle salon employees are promised "remarkable" compensation under a system called "Guaranteed Salary vs. Commission Plan." Employees are paid either a commission for services performed and products sold or a guaranteed base wage, depending on which is greater. Guaranteed base wage is simply an hourly rate, generally ranging from $5.35/hour to $6.00/hour. Commissions generally range from 40% to 50% of an employee's service sales.

14. The ostensible purpose of this compensation plan is to reward hard-working SmartStyle salon employees by commission when their salons are busy, but to ensure fair compensation for employees when customer traffic is slow. In reality, however, the "guaranteed base wage" promise is a deception. It is Regis Corporation's policy, both written and unwritten, to make sure employees "cover their guaranteed base wage" and earn commission. Employees who do not "cover their guaranteed base wage" are written-up and terminated. This is true even though SmartStyle salons allow no appointments and are dependent on Wal-Mart customer walk-ins for business. This "cover base wage or be fired" practice creates enormous pressure on SmartStyle salon employees to make it appear that their hours worked are low so they "cover base wage" and earn commission.

15. The hierarchy of the SmartStyle division of Regis Corporation consists of the following titles in descending order of seniority: Chief Operating Officer, Vice-President, Director, Regional Manager, Area Supervisor, salon manager and stylist.

16. Area Supervisor Kim Keith, for example, is responsible for managing approximately 13 SmartStyle locations in Southern Missouri, including salons in Carthage, Webb City, Bolivar, Joplin, Neosho, Monett, Nixa, Republic, and Springfield. Keith was the Area Supervisor for Plaintiffs Garner, Heckmaster, Stubblefield and Grigsby during the previous three years, and

continues in that capacity as of the date of this lawsuit. Keith is paid a salary, but has the possibility of earning substantial bonuses and incentive compensation if the stores under her supervision contain costs and reach certain profitability goals. Regis Corporation places significant pressure on managers such as Keith to keep labor costs (*i.e.*, the cost of compensating employees) very low.

17. During the time she managed Garner, Heckmaster, Stubblefield and Grigsby, Keith was constantly exhorting salon managers to keep their labor costs and payroll down. Irritated that there were times when employees (due to slow customer traffic in Wal-Mart) would not be able to "cover base wage" and earn commission, Keith ordered salon managers to have employees in their stores clock out (but remain in the salon) when they were not servicing a customer. Keith, on numerous occasions, also personally ordered salon managers and stylists to stay off the clock while working.

18. Keith reports to Regional Manager Ronda Pinkston. Pinkston's region includes approximately 80 SmartStyle salons in Missouri, Kansas and Nebraska. As with Keith, Pinkston was eligible for significant bonuses and incentive compensation dependent on the profitability of her region's salons. Consequently, Pinkston was under the same pressure to control costs, particularly labor costs, to make her region appear profitable. Pinkston also personally directed salon managers and stylists to stay off the clock when they were not busy.

19. Pinkston reports to Cheryl Meyer, a SmartStyle Director based in Regis Corporation's Minnesota headquarters. On information and belief, the practice of having hourly workers "clock out" to suppress labor costs is a company-wide practice specifically permitted and condoned by Meyer and other senior managers of the Regis Corporation. Even a cursory examination of store records, such as the Salary Analysis reports generated each pay period,

SHS-0274-13781                                5
Case 3:03-cv-05037-SWH   Document 1-2   Filed 04/10/03   Page 5 of 16

reveals that SmartStyle salon employees are clocking out during work time in accordance with management's directives. For example, the Salary Analysis reports reflect that employees are regularly spending far less time on the clock than they are scheduled to work. In addition, individual time records reflect that hourly workers are clocking in and out multiple times during a single workday even though "official" company policy requires that employees remain at the salon for their entire shift and to clock out only for lunch.

20. The net effect of the "clock out" practice instituted and approved by company managers is that Regis Corporation pays its employees less than minimum wage, fails to pay overtime compensation and willfully fails to keep accurate time records in order to save payroll costs. Consequently, SmartStyle salons appear more profitable than they really are, Area Supervisors, Regional Managers and other executives achieve incentive compensation, and Regis Corporation enjoys ill-gained profits at the expense of its hourly employees.

21. Separate, but related, is Regis Corporation's practice regarding overtime. Although employees are told they will be paid 1½ times their regular rate of pay for all hours worked over 40 in a work week, as required by 29 U.S.C. § 207(a)(1), company practice is not to pay overtime. In fact, recording overtime hours is a cause for discipline, including termination. This is true even though SmartStyle salon employees are often required to work in excess of 40 hours per week.

22. For example, Plaintiffs Garner and Heckmaster were constantly instructed by Keith and Pinkston that there was to be no overtime recorded in their respective stores. Garner and Heckmaster were required to regularly work in excess of 60 hours a week, but under Regis Corporation's "no overtime" mandate, overtime hours were worked off the clock and not recorded. The same is true of other employees, such as Stubblefield and Grigsby, who often

worked more than 40 hours in a week but clocked out as their hours approached 40 for fear of being disciplined or terminated.

23. It is also Regis Corporation's practice not to compensate employees for significant time worked unrelated to servicing customers, but still for Regis Corporation's benefit. This includes mandatory attendance at staff meetings, training seminars, recruiting efforts and conducting inventory.

24. Staff Meetings are held at SmartStyle salons on a weekly basis. Attendance by employees is mandatory, and the meetings can last as long as an hour. Failure to attend is grounds for discipline and discharge. SmartStyle salon employees are directed, however, not to clock in or record mandatory staff meetings as time worked.

25. Regis Corporation also requires its employees to undergo continuing education through a video education program, in-salon seminars, and weekend shows. Attendance at these education and training sessions is mandatory for all salon employees. Failure to attend is grounds for discipline and discharge. Employees are not, however, permitted to clock in or record time spent at these mandatory education and training sessions as time worked. When questioned about the propriety of requiring employees to attend such sessions off the clock, Regis Corporation managers Keith and Pinkston responded that employees "should be grateful for the education."

26. Regis Corporation requires its employees to spend significant time and energy recruiting new stylists for SmartStyle salons. The company does not, however, pay employees for their investment of time and energy in recruiting. Garner and Heckmaster, for example, were required to visit local beauty salons and cosmetology schools for purposes of recruiting, but were not permitted to record such time as hours worked.

27. Inventory is conducted at SmartStyle salons on a regular basis. Employees are required to work unscheduled shifts (sometimes as long as 8-12 hours) to conduct inventory. Regis Corporation managers require that inventory be conducted off the clock, and SmartStyle salon employees are not compensated for their hours worked.

28. There are numerous other examples of SmartStyle salon employees being required to work off the clock and without compensation. These include such things as the requirement that employees call in every Sunday evening for a "Broadcast Message" from their Area Supervisor, but not being permitted to clock in or record the mandatory call-in as time worked. Employees are also required to work off the clock in performing such tasks as closing up the store and sweeping after store hours have ended. Employees are also required to arrive for their scheduled shifts at least 15 minutes early, but are not permitted to clock in until their shift "officially" begins. These examples, and many others, are symptoms of an overall pattern of abuse and manipulation by Regis Corporation of its SmartStyle hourly employees in an effort to suppress labor costs and artificially inflate productivity and profitability statistics.

## GENERAL ALLEGATIONS RELEVANT TO LINDA GARNER'S INDIVIDUAL CLAIMS

29. Individually-named plaintiff, Linda Garner, was born and raised in southern Missouri, and currently resides in Sarcoxie, Missouri. After attending cosmetology school, Garner became a Missouri-licensed cosmetologist in 1988. For the next eleven years, Garner worked as a stylist for a number of beauty salons in and around Joplin, Missouri. Garner worked primarily as an independent contractor during this time, and, at her own initiative and expense, gradually developed an extensive client-base. Information regarding Garner's clients was maintained in a personal Rolodex and included the names, addresses, telephone numbers, birth

dates, personalized notes and other information concerning clients and their preferences. By the time of the events giving rise to this litigation, there were in excess of 125 client entries in Garner's personal Rolodex.

30. In August 1999, Regis Corporation hired Garner as a SmartStyle stylist. Garner initially worked out of the SmartStyle salon in Carthage, Missouri. SmartStyle management was aware of Garner's extensive client-base and that she maintained client information in a personal Rolodex. As SmartStyle's managers had hoped, revenues increased at each of the SmartStyle salons at which Garner worked after she was hired due in large part to the continued patronage of Garner's clients.

31. In 2001, Garner was appointed manager of the Webb City, Missouri SmartStyle salon. During her tenure as a manager, Garner became increasingly appalled by Regis Corporation's treatment of her and the other employees in the Webb City SmartStyle salon. On numerous occasions during her employment, Garner complained and protested to her Area Supervisor Kim Keith and to her Regional Manager Ronda Pinkston about the company's pay practices and other wrongful treatment of SmartStyle salon employees. Keith and Pinkston often ignored Garner's complaints. On several occasions, Keith and Pinkston specifically threatened Garner to keep quiet if she valued her job.

32. Garner's protests regarding the company's wrongful employment and compensation practices continued and escalated during the 2002 holiday season. In December 2002, Keith instructed Garner to fire several salon employees because they were not "covering their hourly wage." Garner refused stating that such a decision was not fair because her employees were working hard (often off the clock at Keith's instruction) and should not be punished for things outside their control such as low walk-in traffic. Garner told Keith that her management

directives of forcing employees to work off the clock and refusing to allow overtime were creating intolerable conditions. Keith was furious that Garner would question her management and that Garner would try to protect her employees.

33. On December 12, 2002, within only a couple days of Garner's last protest, Keith and Pinkston arrived unannounced in the Webb City salon and abruptly fired Garner. Garner asked the basis for her termination, but Keith and Pinkston refused to provide a reason. Garner asked that she be permitted to retrieve her personal property before leaving, including, most importantly, her personal Rolodex of customer information she had been accumulating over the prior 14 years. On the day she was fired, Garner had noticed that her Rolodex was inexplicably missing from her work station and, upon being notified of her termination, Garner specifically demanded that Keith and Pinkston return it to her. Keith and Pinkston refused. As of the date of this Complaint, Regis Corporation continues to fail and refuse to return Garner's personal Rolodex.

34. As a result of Regis Corporation's unlawful misappropriation and conversion of her Rolodex, Garner has been unable to reestablish her client base and has suffered significant economic harm, in excess of $75,000, exclusive of interest and costs.

## COUNT I

### Violation of the Fair Labor Standards Act of 1938 - Minimum Wage and Overtime Claims

**(Brought on Behalf of All Individual Plaintiffs and All Others Similarly Situated)**

35. Plaintiffs reassert and re-allege the allegations set forth in Paragraphs 1 through 34 above.

36. At all time material herein, Plaintiffs have been entitled to the rights, protections and benefits provided under the FLSA, 29 U.S.C. § 201 *et. seq.*

37. The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

38. Defendant was, and is, subject to the minimum wage and overtime pay requirements of the FLSA because it is an enterprise engaged in commerce and its employees are engaged in commerce.

39. Defendant violated the FLSA by failing to pay employees minimum wage and failing to pay employees for overtime. In the course of perpetrating these unlawful practices, Defendant has also willfully failed to keep accurate records of all hours worked by employees.

40. Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from the overtime pay obligations set forth under Section 7(a)(1) of the FLSA. None of the FLSA exemptions apply to the Plaintiffs. Accordingly, Plaintiffs must be paid overtime pay in accordance with Section 7 of the FLSA.

41. The individually-named plaintiffs and all similarly situated employees are victims of a uniform and company-wide compensation policy. This uniform policy, in violation of the FLSA, has been and continues to be applied to all SmartStyle salons across the country.

42. Plaintiffs and all similarly situated employees are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendant acted willfully and knew

or showed reckless disregard for the matter of whether its conduct was prohibited by Section 6(a) of the Portal-to-Portal Pay Act, as amended, 29 U.S.C. § 255(a).

43. Defendant has not acted in good faith nor with reasonable grounds to believe its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay described above, pursuant to Section 16(b) of the FLSA. Alternatively, should the Court find Defendant did not act willfully in failing to pay overtime pay, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

44. As a result of the aforesaid willful violations of the FLSA's minimum wage and overtime provisions, minimum wage and overtime compensation has been unlawfully withheld by Defendant from Plaintiffs for which Defendant is liable pursuant to 29 U.S.C. § 216(b), together with an additional equal amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and costs of this action.

45. Over the past three years, each individually-named Plaintiff performed work for Defendant for which she has not been properly compensated under the FLSA, which by just and reasonable inference exceeds at least the sum of $10,000.00 for each such Plaintiff. A more precise estimate is impossible at this time as much of the necessary employment records and other relevant information is in the exclusive possession, custody and control of the Defendant.

WHEREFORE, individually-named Plaintiffs, and all similarly situated employees, demand judgment against Defendant and pray for: (1) compensatory and punitive damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4)

for pre-judgment and post-judgment interest as provided by law; and (5) for such other relief the Court deems fair and equitable.

## COUNT II

## Retaliation in Violation of Section 15(a)(3) of the Fair Labor Standards Act of 1938

### (Brought on Behalf of Linda Garner Individually)

46. Plaintiff Linda Garner reasserts and re-alleges the allegations set forth in Paragraphs 1 through 45 above.

47. Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), prohibits an employer from retaliating against an employee who protests violations of the FLSA.

48. On numerous occasions during her employment, including immediately prior to her termination, Garner opposed and protested Defendant's unlawful employment practices, which included Defendant's violations of the FLSA's minimum wage and overtime provisions, to Defendant's management officials, including Regional Manager Ronda Pinkston and Area Supervisor Kim Keith.

49. Defendant terminated Garner's employment in retaliation for her opposition, protests and exercise of her protected rights under the FLSA. The immediate cause or motivating factor of Defendant's discharge of Garner was her opposition, protest and exercise of her rights under the FLSA.

50. Defendant intentionally and willfully retaliated against Garner and acted with malice and reckless indifference to her federally protected rights under the FLSA.

WHEREFORE, Plaintiff Garner demands judgment against Defendant and prays for an award of (1) compensatory and punitive damages; (2) liquidated damages; (3) attorneys' fees and

costs as allowed by Section 16(b) of the FLSA; (4) for pre-judgment and post-judgment interest as provided by law; and (5) for such other relief the Court deems fair and equitable.

## COUNT III

### Violation of Missouri Uniform Trade Secrets Act

### (Brought On Behalf of Linda Garner Individually)

51. Plaintiff Linda Garner reasserts and re-alleges the allegations set forth in Paragraphs 1 through 50 above.

52. Garner's personal Rolodex containing in excess of 125 names, addresses, telephone numbers, birth dates, personalized notes and other information concerning her clients and their preferences constitutes a trade secret under the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. § 417.450 *et. seq.*

53. Defendant misappropriated Garner's personal Rolodex through improper means.

54. Defendant's misappropriation was outrageous because of the Defendant's evil motive or reckless indifference to the rights of Garner.

55. As a direct and proximate result of Defendant's misappropriation of Garner's Rolodex, Garner has been unable to reestablish her client base and has suffered significant economic harm, in excess of $75,000, exclusive of interest and costs. Garner is entitled to recover damages for Defendant's misappropriation, including the actual loss caused by the misappropriation and the unjust enrichment caused by the misappropriation that is not taken into account in computing actual loss. Because the misappropriation was outrageous, caused by Defendant's evil motive and reckless indifference to Garner's rights, she is also entitled to an award of punitive damages.

WHEREFORE, Plaintiff Garner demands judgment against Defendant and prays for an award of compensatory and punitive damages, for prejudgment and post-judgment interest as provided by law, for attorneys' fees and costs herein incurred and expended, and for such other and further relief permitted under the Missouri Uniform Trade Secrets Act and as the Court deems just and proper.

## COUNT IV

### Conversion

### (Brought On Behalf of Linda Garner Individually)

56. Plaintiff Linda Garner reasserts and re-alleges the allegations set forth in Paragraphs 1 through 55 above.

57. Garner had a personal Rolodex containing at least 125 names, addresses, telephone numbers, birth dates, personalized notes and other information concerning her clients and their preferences. This Rolodex constituted personal property of Plaintiff Garner.

58. At or about the time of Garner's termination, Defendant, without authorization by Garner, seized her Rolodex and assumed a right of ownership over the Rolodex to the exclusion of Garner's rights. Despite repeated demands by Garner, Defendant failed and refused to return the Rolodex to its true owner.

59. Defendant's intentional exercise of dominion or control over Garner's Rolodex so seriously interfered with Garner's right of control that Defendant is required to pay Garner the full value of the property, which Garner estimates to be in excess of $75,000, exclusive of interest and costs.

60. Defendant's conversion of Garner's Rolodex was outrageous, caused by Defendant's evil motive and reckless indifference to Garner's rights.

WHEREFORE, Plaintiff Garner demands judgment against Defendant and prays for an award of compensatory and punitive damages, for prejudgment and post-judgment interest as provided by law, and for attorneys' fees and costs herein incurred and expended and for such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

All Plaintiffs hereby request trial by jury of all issues triable by jury.

**Dated: April 10, 2003**

Respectfully submitted,

STUEVE HELDER SIEGEL LLP

_____
George A. Hanson          MO #43450
Todd M. McGuire           MO #51361
330 West 47th Street, Suite 250
Kansas City, MO 64112
Phone: (816) 714-7100
Facsimile: (816) 714-7101

**ATTORNEYS FOR PLAINTIFFS**