IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| LINDA FAY GARNER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 03-5037-CV-SW-SWH |
| | ) | |
| REGIS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Plaintiffs Linda Fay Garner, Harmony Heckmaster, Neville Lou Stubblefield and Jessica Grigsby brought this suit, individually and on behalf of a class of other similarly situated plaintiffs, alleging defendant Regis Corporation violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. The Complaint also contains three counts brought by plaintiff Garner individually against defendant Regis Corporation, i.e. Counts II, III and IV. Count II alleges retaliation in violation of 29 U.S.C. § 215(a)(3), Count III alleges a violation of the Missouri Uniform Trade Secrets Act and Count IV alleges conversion. Pending before the Court is Defendant's Motion for Summary Judgment on Plaintiff Garner's Individual Claims (doc #68).

I. COUNT II (RETALIATION)

Defendant contends summary judgment is appropriate as to Count II of the Complaint because plaintiff's employment was not terminated in retaliation for the exercise of any protected rights under the FLSA. First, defendant argues that plaintiff cannot establish a prima facie case of retaliatory discharge because she did not engage in any protected act and even if she did engage in protected activity, she cannot show a causal connection between the protected act and her termination from employment. Second, defendant argues that it can establish nondiscriminatory

reasons for plaintiff's termination while plaintiff cannot show pretext.

When there is no direct evidence of retaliation, as in this case, the court applies the burden shifting analysis as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Conner v. Schnuck Mkts., Inc., 121 F.3d 1390, 1394 (10th Cir. 1997). Under the McDonnell Douglas analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation. See McDonnell Douglas Corp., 411 U.S. at 802. If the plaintiff is able to establish a prima facie case, the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action taken. Id. Once the defendant articulates such a reason, the burden reverts to the plaintiff to demonstrate an issue of material fact as to whether the proffered reason is pretextual. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507-08 (1993).

To establish a prima facie case of retaliation, the plaintiff must show that: (1) she engaged in a protected activity;[1] (2) she suffered an adverse employment action; and (3) a causal connection

---

[1] 29 U.S.C. § 215(a)(3) provides that it is unlawful for any person:

> To discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

The Eighth Circuit has construed this section liberally in order to be consistent with its remedial purpose. See Saffels v. Rice, 40 F.3d 1546, 1548 (8th Cir. 1994). Courts have held that even the unofficial assertion of rights in the workplace constitutes protected activity under FLSA. See Valerio v. Putnam Assocs. Inc., 173 F.3d 35, 41 (1st Cir. 1999); Lambert v. Ackerley, 180 F.3d 997, 1008 (9th Cir. 1999), cert. denied, 528 U.S. 1116 (2000). "[S]o long as an employee communicates the *substance* of his allegations to the employer (e.g. that the employer has failed to pay adequate overtime, or has failed to pay the minimum wage), he is protected by § 215(a)(3)." Lambert, 180 F.3d at 1008.

2

existed between the employee's protected activity and the adverse employment action.[2] See Conner v. Schnuck Mkts., Inc., 121 F.3d 1390, 1394 (10th Cir. 1997). Defendant Regis Corporation claims that plaintiff Garner cannot meet the first and third elements of a prima facie case of retaliation.

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is granted when the pleadings and evidence show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to show the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Once the moving party has met its burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. In opposing a properly supported motion for summary judgment, the nonmoving party may not rest upon allegations or general denials, but must come forward with specific facts to prove that a genuine issue for trial exists. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The Court must review the facts in the light most favorable to the party opposing the motion for summary judgment and give that party the benefit of any inferences that logically can be drawn from those facts. See Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. See Kopp v. Samaritan Health Sys., Inc., 13 F.3d 264, 269 (8th Cir. 1993).

With these standards in mind, the Court finds that there is evidence which creates genuine issues of material fact for trial which precludes the Court from granting defendant's motion. For

---

[2] The causal connection element requires that plaintiff establish that the protected activity and the adverse action are related. See McMillin v. Foodbrands Supply Chain Servs., Inc., 272 F.Supp.2d 1211, 1219-20 (D. Kan. 2003). "Circumstantial evidence may be used to establish a causal connection between the protected activity and the subsequent adverse employment action." Broadus v. O.K. Indus., Inc., 238 F.3d 990, 991 (8th Cir. 2001). When an adverse employment action closely follows a protected activity, there may be an inference of retaliation. See Reich v. Hoy Shoe Co., 32 F.3d 361, 365 n.4 (8th Cir. 1994).

3

instance, the following evidence (which listing is not intended to be an exhaustive listing) creates a genuine issue as to whether plaintiff Garner engaged in a protected activity:

- Garner repeatedly complained to Kim Keith, her direct supervisor, regarding Keith's demand that stylists work off the clock. (Garner Depo. at 197)

- Garner complained to Keith regarding not being paid for required recruiting activities. (Garner Depo. at 65)

- Garner complained to Ronda Pinkston at a manager meeting regarding not being paid for required training seminars and attendance at monthly meetings. (Garner Depo. at 145)

- Garner refused to fire Nev Stubblefield when Keith told her she wanted Stubblefield fired because she was not making commission and would be drawing an hourly wage, i.e. she was not working off the clock enough. (Garner Depo. at 161; Garner Declaration at ¶ 4)

Likewise, the following evidence (which again is not intended to be an exhaustive listing) creates a genuine issue as to whether a causal connection existed between plaintiff Garner's protected activity and the adverse employment action:

- On October 16, 2002, Nev Stubblefield called Lindsay at the corporate office and complained about being forced to work off the clock. (Stubblefield Depo. at 63) Lindsay told Stubblefield that she should not be working off the clock and wanted to know who her supervisors were. (Stubblefield Depo. at 64)

- On October 17, 2002, Kim Keith called Stubblefield and asked her why she went over her head and talked to Lindsay. Stubblefield complained to Keith about having to work off the clock. (Stubblefield Depo. at 43, 62)

- Keith called Garner and said that she wanted Stubblefield written up for disrespecting her because Stubblefield had called corporate and told them that Keith had been telling salon employees to get off the clock. Garner told Keith that Stubblefield was tired of working off the clock and not getting paid. Keith told Garner that Stubblefield had a bad attitude and that they needed to get rid of her. Garner insisted that it would be wrong to fire Stubblefield for complaining to corporate. (Garner Declaration at ¶ 3)

- After this conversation, Keith continued to harass Stubblefield and Garner continued to defend Stubblefield. (Garner Declaration at ¶ 4)

4

- At the manager meeting held in November 2002, Garner complained to Ronda Pinkston about not being paid for required training seminars and attendance at monthly meetings. (Garner Depo. at 145)

- On December 9, 2002, Keith called Garner and told her to fire Stubblefield because Stubblefield was not making commission and would be drawing an hourly wage, i.e. she was not working off the clock enough. Garner refused to fire Stubblefield. (Garner Depo. at 161; Garner Declaration at ¶¶ 3 and 4)

- Garner's employment was terminated on December 12, 2002. (Complaint at ¶ 33)

While plaintiff's long history of complaining to her immediate supervisor, Kim Keith, about herself and her stylists being forced to work off the clock weighs against a causal connection, plaintiff's employment was terminated within a few weeks of taking her complaints up a level, that is after she complained to her supervisor's supervisor, Ronda Pinkston, in front of other managers, and within a few days after she refused to fire Nev Stubblefield, who plaintiff believed was being retaliated against because of her complaint to the corporate office about being forced to work off the clock. This evidence supports a connection between protected activity and plaintiff's termination. Therefore, viewing the evidence in the light most favorable to plaintiff, plaintiff has established a prima facie case of retaliation under the FLSA.

Defendant Regis Corporation contends that there were legitimate, nondiscriminatory reasons for plaintiff's termination and cites various verbal and written warnings that plaintiff received as well as complaints about plaintiff from stylists and Wal-Mart management. The Court has reviewed the evidence submitted and finds that the following evidence (which again is not intended to be an exhaustive listing), when taken as true, disputes defendant's assertions of poor performance and misconduct:

- On June 1, 2002, Kim Keith wrote Garner and her staff: "Great job everyone! You all made salon quota! Yeah!! Keep up the great work!"

5

(Depo. Ex. 64)

- On July 1, 2002, Keith wrote Garner and her staff: "Thank you all for a wonderful year!! Because of all of you, our area finished out #1 in the Region! Thank you for all your hard work and extra efforts throughout the year!!" (Depo. Ex. 66)

- Salon Director Cheryl Meyer told Garner in the late summer of 2002 that she had heard wonderful things about Garner and that Garner was doing a great job with the store. (Garner Depo. at 64)

- Keith gave the salon a favorable salon evaluation on October 26.[3] (Depo. Ex. 77)

- Keith gave Garner a favorable evaluation on October 31, 2002. (Depo. Ex. 38)

- Shortly before Garner was terminated, Keith instructed the stylists working under Garner to write down their complaints about Garner because Keith needed "enough information and enough reason to let Linda go." (Bish Depo. at 24)

The Court finds that this evidence as well as the evidence set forth above with respect to whether a causal connection existed between plaintiff Garner's protected activity and the adverse employment action creates a genuine issue as to whether the stated reason for plaintiff's termination is a pretext for retaliation against plaintiff.

The Court finds that whether plaintiff Garner was discharged due to protected activity or because of poor performance and misconduct is properly a jury issue. Defendant's request that it be granted summary judgment on Count II must be denied.

## II. COUNT III (MISAPPROPRIATION OF TRADE SECRET)

Defendant contends summary judgment is appropriate as to Count III of the complaint alleging defendant misappropriated plaintiff's trade secrets under the Missouri Uniform Trade

---

[3]There is a question of fact as to whether the evaluation is dated October 26, 2002, or October 26, 2001.

Secrets Act, R.S.Mo. § 417.450, et seq. First, defendant argues the client information contained in plaintiff's Rolodex is not a trade secret as defined by the Act. Second, defendant argues that even if the information in the Rolodex is deemed a "trade secret," defendant did not misappropriate the information because plaintiff was an employee of defendant when she performed services for the clients and, therefore, defendant was entitled to retain the information.

Plaintiff claims defendant misappropriated her trade secrets when Ronda Pinkston took her Rolodex. The Rolodex contained information on over 125 of Garner's clients, including their contact information, the client's preferences and her personal notes. (Complaint at ¶ 52) The Rolodex also contained Garner's personal information such as emergency contact numbers for doctors and hospitals. (Garner Depo. at 12-13)

In order to have a valid claim of misappropriation of a trade secret, the information alleged to have been misappropriated must be a "trade secret." Under the Missouri Uniform Trade Secrets Act, a "trade secret" is defined as:

> ... information, including but not limited to, technical or nontechnical data, a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (a)  Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
>
> (b)  Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

R.S.Mo. § 417.453(4). The paramount element of a trade secret is that it is secret. "Matters of public knowledge ... cannot be appropriated by one as his secret." Kessler-Heasley Artificial Limb Co. v. Kenney, 90 S.W.3d 181, 188-89 (Mo. Ct. App. 2002)(quoting AEE-EMF, Inc. v. Passmore, 906 S.W.2d 714, 722 (Mo. Ct. App. 1995)). When a customer list is the subject of the inquiry, an important factor in determining whether the customer list is a trade secret is whether the party took

7

Case 3:03-cv-05037-SWH   Document 187   Filed 12/28/04   Page 7 of 10

actions to guard the secrecy or preserve the confidentiality of the list. See Allen v. Johar, Inc., 823 S.W.2d 824, 827 (Ark. 1992)(discussing the identical definition of "trade secret" as found in the Arkansas Trade Secret Law).

While a customer list may be found to be a trade secret,[4] plaintiff Garner's customer list and client information is not a trade secret. First, the information was easily ascertainable. Plaintiff's customers came into defendant's premises to have their hair styled.[5] Second, plaintiff did not take any action to guard the privacy of her customer list. There is no evidence that plaintiff took her Rolodex home after work or when she was not in the salon or otherwise kept the Rolodex in a place in the salon that was generally inaccessible to others.[6] There is no evidence that she kept the names of her clients secret or the services she rendered to them secret. Given the Court's finding that plaintiff's customer list and client information is not a trade secret, there can be no misappropriation claim and summary judgment is granted as to Count III.

### III. COUNT IV (CONVERSION)

It is undisputed that Ronda Pinkston took plaintiff's Rolodex containing client information from plaintiff's workstation. (See Defendant's Statement of Fact at No. 39; Plaintiff's Response to Defendant's Fact No. 39) The Rolodex was not returned until October 17, 2003.

Defendant contends summary judgment is appropriate as to Count IV of the complaint alleging the tort of conversion. Defendant argues that defendant, not plaintiff, was the rightful

---

[4] See Kessler-Heasley Artificial Limb Co. v. Kenney, 90 S.W.3d 181, 188 (Mo. Ct. App. 2002).

[5] Plaintiff could identify only four clients listed in her Rolodex for whom she had not provided services while working at SmartStyle. (Garner Depo. at 102-112)

[6] Ronda Pinkston testified that the Rolodex was sitting on top of Garner's workstation. (Pinkston Depo. at 139)

8

owner of the information contained in the Rolodex and therefore a conversion could not have occurred when Ronda Pinkston took the Rolodex from plaintiff's workstation. Additionally, defendant argues that plaintiff consented to Pinkston taking the Rolodex when she failed to remove the same upon instructions from Keith.

Three elements must be established in order to prove conversion: (1) plaintiff was the owner of the property or entitled to its possession; (2) defendant took possession of the property with the intent to exercise some control over it; and (3) defendant thereby deprived plaintiff of the right to possession. See Weicht v. Suburban Newspapers of Greater St. Louis, Inc., 32 S.W.3d 592, 596 (Mo. Ct. App. 2000).

There does not appear to be any dispute with respect to the second and third elements of conversion. As set forth above, it is undisputed that Ronda Pinkston took plaintiff's Rolodex containing client information from plaintiff's workstation. Pinkston refused to return the Rolodex to Garner. (Pinkston Depo. at 136) Plaintiff was deprived of her right to possession of the Rolodex until its return in October 2003. However, there are facts in dispute as to who owns the information contained within the Rolodex. Plaintiff began keeping the Rolodex of index cards when she first started performing hair services and just kept adding names to the Rolodex as time went by. (Garner Depo. at 112) Defendant claims it is the rightful owner of the information contained in the Rolodex because plaintiff recorded information about SmartStyle clients in her Rolodex rather than utilize SmartStyle information cards. Plaintiff, however, disputes defendant's claim that she did not use SmartStyle information cards. (Garner Depo. at 122-25)

Defendant argues that plaintiff consented to defendant's retention of the property. Consent is a complete defense to a conversion claim. See Weicht v. Suburban Newspapers of Greater St. Louis, Inc., 32 S.W.3d 592, 597 (Mo. Ct. App. 2000). Consent may be express or implied. See

9

Maples v. United Savings and Loan Ass'n, 686 S.W.2d 525, 527 (Mo. Ct. App. 1985). Implied consent is manifested by "signs, actions or facts, or by inaction or silence which creates an inference that consent has been given." Id. Kim Keith stated that she told Garner that Garner needed to remove the Rolodex or it would be considered SmartStyle property. (Keith Depo. at 143) Because Garner did not remove the Rolodex as instructed, defendant contends Garner impliedly consented to defendant's retention of the Rolodex. Keith's statement, however, is disputed. Garner claims no one told her to remove the Rolodex. (Garner Declaration at ¶ 6)

Given that facts are in dispute with respect to the owner of the information contained in the Rolodex and with respect to the issue of consent, defendant's request that it be granted summary judgment on Count IV must be denied.

## IV. CONCLUSION

For the reasons discussed above, summary judgment is granted as to Count III of plaintiff's Complaint and is denied as to Counts II and IV. Therefore, it is

ORDERED that Defendant's Motion for Summary Judgment on Plaintiff Garner's Individual Claims (doc #68) is granted in part and denied in part.

*/s/ Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE